# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TERE MAGEE, N-91135, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 14-cv-6879 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| KIM BUTLER, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons set forth below, the Court denies Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 [8]. Petitioner's motion for discovery [19] is also denied. The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2), and directs the Clerk to enter judgment in favor of Respondent.

**I.    Background**

On June 7, 2005, a jury in the Circuit Court of Cook County found Petitioner Tere Magee guilty on two counts of armed robbery and four counts of aggravated criminal sexual assault in conjunction with an incident involving two women at a beauty salon. The sentencing judge originally imposed a sentence of 42 years: two concurrent 10–year prison terms for the armed robbery counts and four consecutive 8–years prison terms for the aggravated criminal sexual assault counts. Soon thereafter, the judge amended the sentence by merging the four aggravated criminal sexual assault counts into two counts, and imposing consecutive 16-year sentences for each of the two merged counts. The judge also increased Petitioner's armed robbery sentence from concurrent 10-year terms to concurrent 18-year terms. The revised sentence resulted in a 50-year term of imprisonment.

The Illinois Appellate Court affirmed the conviction on June 29, 2007. See *People v. Magee*, 872 N.E.2d 63 (Ill. App. Ct. 2007). In late July or early August 2007,[1] Petitioner's appellate counsel filed a petition for leave to appeal before the Illinois Supreme Court. The Illinois Supreme Court denied the petition for leave to appeal on November 29, 2007.

Petitioner claims that he did not learn about the Illinois Supreme Court's denial of his petition for leave to appeal until August 5, 2009—almost two years later. Petitioner alleges that, having not heard from his appellate counsel regarding the outcome of that petition, he filed a complaint with the ARDC on July 29, 2009. The ARDC confirmed receipt of Petitioner's complaint on August 5, 2009 [8, at 34], and that same day Petitioner's appellate counsel wrote Petitioner a letter apologizing for not informing him of the decision, and providing him with information regarding the post-conviction appeal process. [8, at 30, 33.]

Approximately two years later—on September 13, 2011—Petitioner filed his post-conviction petition in Cook County Circuit Court. The court denied the petition on November 22, 2011. Petitioner moved the court to reconsider on December 19, 2011, and the court denied that motion on February 3, 2012. Continuing up the chain, Petitioner filed his notice of appeal on March 1, 2012. The Illinois Appellate Court affirmed the denial of Petitioner's post-conviction petition on August 20, 2013, and simultaneously granted Petitioner's counsel's motion for leave to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Petitioner then filed a pro se petition for leave to appeal to the Supreme Court of Illinois, which the court denied on January 29, 2014.

Seven months later (*i.e.*, on September 4, 2014), Petitioner filed his federal habeas petition in this Court pursuant to 28 U.S.C. § 2254. Petitioner provided a certificate of service

---

[1] Petitioner provided two letters from his appellate attorney informing Petitioner that his petition for leave to appeal before the Illinois Supreme Court had been filed. Those letters are dated August 2, 2007 and August 6, 2007. [8, at 30, 33.]

2

with his filing claiming that he mailed his "Equitable Tolling Memorandum of Law" (*i.e.*, one component of his habeas petition) to the Illinois Attorney General on July 7, 2014. While this technically falls short of the mailing requirements articulated in Rule 3(d) of the Rules Governing Section 2254 cases, the Court will interpret Petitioner's pro se filing liberally and consider the filing date of his § 2254 petition to be July 7, 2014.

**II.     Section 2254 Petition**

Under the Antiterrorism and Effective Death Penalty Act of 1996, habeas relief cannot be granted unless the state court's decision was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court. See *Williams v. Taylor*, 529 U.S. 362, 402–03 (2000); *Warren v. Baenen*, 712 F.3d 1090, 1096 (7th Cir. 2013). Habeas relief "has historically been regarded as an extraordinary remedy, a 'bulwark against convictions that violate fundamental fairness.'" *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993). This is because habeas petitions require the district court "essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Habeas relief under § 2254 is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–103 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.2 (1979) (Stevens, J., concurring in judgment)). To obtain habeas relief in federal court, "a state petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

A.   **Timeliness**

1.   **Statutory Tolling**

Habeas petitions filed under § 2254 are subject to a one-year statute of limitations. The limitations period begins on the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). Here, Respondent alleges that the statute of limitations began to run on "the date on which the judgment became final by the conclusion of direct review," which occurred 90 days after the Illinois Supreme Court denied Petitioner's petition for leave to appeal—*i.e.*, 90 days after November 29, 2007,[2] or February 27, 2008. Thus, according to Respondent, Petitioner's § 2254 petition was due on or before February 27, 2009 (absent any statutory or equitable tolling, as discussed below). Petitioner did not file his § 2254 petition until July 7, 2014, more than five years later.

Petitioner alleges that the start of his one-year limitations period should be governed by § 2244(d)(1)(B) because his appellate counsel did not inform him of the denial of his petition for leave to appeal until August 5, 2009, which he argues is the date on which the State-created

---

[2] The 90 days covers the amount of time in which the petitioner could have filed a petition for a writ of certiorari from the United States Supreme Court. See S. Ct. Rule 13 (stating that a petition for writ of certiorari must be filed within 90 days after entry of judgment); *Gonzalez v. Thaler*, 132 S. Ct. 641, 653 (2012) (holding that if a petitioner does not seek certiorari to Supreme Court, the judgment becomes final under § 2244(d)(1)(A) "when the time for filing a certiorari petition expires").

4

impediment was removed.[3] There is no dispute that Petitioner's state appellate defender "overlooked the notification and never sent [Petitioner] a letter" informing him of the denial. [8, at 31.]

One question is whether the state appellate defender's failure to inform Petitioner of the denial was "in violation of the Constitution or laws of the United States" so as to trigger the later start to his limitations period. Respondent argues that the State was not "constitutionally obliged" to provide Petitioner with an attorney in conjunction with his discretionary appeal to the Illinois Supreme Court, see *Ross v. Moffit*, 417 U.S. 600, 610 (1974) (no constitutional right to counsel on discretionary appeal to state supreme court), and thus any wrongdoing by Petitioner's counsel could not have violated the Constitution or the laws of the United States.

In a related context, courts have held that "[s]ince there is no right to the effective assistance of counsel in post-conviction proceedings, ineffective assistance of post-conviction counsel does not constitute cause to excuse a procedural default." *Cawley v. DeTella*, 71 F.3d 691, 695 (7th Cir. 1995). Similarly, because Petitioner was not constitutionally entitled to counsel in conjunction with his appeal to the Illinois Supreme Court, he had no constitutional right to effective counsel either. Thus, while the state appellate defender admittedly made a mistake, that error was not "in violation of the Constitution or laws of the United States."

Moreover, even if Petitioner's counsel's actions did violate federal law,[4] there is a secondary question as to whether the attorney's actions created an "impediment" as contemplated by the statute. Importantly, where there is no right to counsel, "the mistakes of

---

[3] To be clear, Petitioner only expressly requests equitable tolling, but he does cite to § 2244(d)(1)(B) and case law invoking the State-created-impediment brand of statutory tolling in discussing the delay created by his appellate counsel. [See 8, at 16.] As such, the Court has construed Petitioner's pro se petition broadly so as to include an argument for statutory tolling.

[4] One potential argument (that Petitioner did not raise) is that the attorney's failure to inform Petitioner of the outcome of his petition for leave to appeal violated his First Amendment right to access to the courts. See, *e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996).

counsel are constructively attributable to the client." *Holland v. Florida*, 560 U.S. 631, 656 (2010). Attributing the delay to Petitioner defeats the "State-created" requirement for statutory tolling. Equally important is the policy behind this legal tenet, which the Supreme Court articulated in *Lawrence v. Florida*:

> Lawrence argues that his counsel's mistake in miscalculating the limitations period entitles him to equitable tolling. If credited, this argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline. Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel.

*Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007). *Lawrence* was an equitable (not statutory) tolling case, but the policy implications apply equally in this context. Other courts that have faced this issue agree. See, *e.g.*, *United States ex rel. Strong v. Hulick*, 530 F. Supp. 2d 1034, 1038 (N.D. Ill. Jan. 18, 2008) ("[O]f course, * * * a prisoner's * * * lawyer's missteps [do not] constitute a state-created impediment to filing that would qualify under section 2244(d)(1)(B)."); *Johnson v. Fla. Dep't of Corrs.*, 513 F.3d 1328, 1331 (11th Cir. 2008) (holding that "'incompetent' performance by appointed counsel 'is not the type of State impediment envisioned in § 2244(d)(1)(B)'" (citation omitted)). At this point, the statutory-tolling inquiry begins to merge with the equitable-tolling inquiry, as the Court considers whether "there is more" to the story than an attorney's missteps. *Strong*, 530 F. Supp. 2d at 1038. As the Court explains in detail below in the equitable-tolling section, no such "plus" factors exist here (*e.g.*, attorney abandonment) that might qualify Petitioner's counsel's actions as an "impediment" so as to warrant statutory tolling. Ultimately, the delay in question is attributable to Petitioner's own inaction over a two-year period in failing to diligently pursue his post-conviction appeals.

To be sure, this does not preclude the possibility that the attorney's misstep might serve as a basis for equitable tolling of the statute of limitations (as discussed in detail below). See,

6

*e.g.*, *Williams v. Sims*, 390 F.3d 958, 960 (7th Cir. 2004) (differentiating statutory tolling under § 2244(d)(1)(B) from equitable tolling). But as far as the effective start date of Petitioner's one-year limitations period is concerned, the statute of limitations began to run on February 27, 2008.

## 2. Equitable Tolling

In computing the running of a statute of limitations for a habeas petitioner, time is excluded while any "properly filed application for State post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2). Petitioner filed his state post-conviction petition on September 13, 2011, and that proceeding became final on January 29, 2014. Assuming that the statute of limitations was tolled during this entire time,[5] the clock still ran for the 42 months before Petitioner filed his post-conviction proceeding and the five months in between the conclusion of his post-conviction proceeding and the filing of his § 2254 petition in this Court. Petitioner argues that the bulk of his 47-month delay should be excused under the doctrine of equitable tolling based on (a) the failure of the state appellate defender to inform him of the Illinois Supreme Court's denial of his petition for leave to appeal, and (b) the extended lockdowns at Menard Correctional Center, which prevented him from accessing the law library.

A petitioner "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). It is a petitioner's burden to establish both of these points. See *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). The

---

[5] Habeas petitioners receive statutory tolling only for "[t]he time during which a *properly filed* application for State post-conviction or other collateral review * * * is pending." 28 U.S.C. § 2244(d)(2) (emphasis added). A petition for collateral review that is rejected as untimely under state law is not "properly filed" and consequently does not toll the statute of limitations. See *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005); see also *Allen v. Siebert*, 552 U.S. 3, 7 (2007); *Brooks v. Walls*, 301 F.3d 839, 841 (7th Cir. 2002) ("[T]o be 'properly filed' an application for collateral review in state court must satisfy the state's timeliness requirements."). Here, Respondent does not object to Petitioner's request for statutory tolling between September 13, 2011 and January 29, 2014, and thus the Court will deem the limitations period tolled during this time.

realm of equitable tolling is a "highly fact-dependent area" in which courts are expected to employ "flexible standards on a case-by-case basis." *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014) (citation omitted). Nonetheless, tolling is rare; it is "reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing." *Nolan v. United States*, 358 F.3d 480, 484 (7th Cir. 2004) (internal quotation marks and alterations omitted); *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013) ("Equitable tolling is an extraordinary remedy and so 'is rarely granted.'" (citation omitted)).

### a. *Equitable Tolling Based on Attorney Error*

The Court already concluded that the Petitioner is not entitled to *statutory* tolling based on the state appellate defender's failure to inform him of the denial of his petition for leave to appeal before the Illinois Supreme Court. But whether the attorney's conduct provides a ground for *equitable* tolling (or "equitable estoppel") hinges on whether Petitioner diligently pursued his rights despite this alleged "extraordinary circumstance." Here, the state appellate defender filed the petition for leave to appeal in late July/early August 2007, and told Petitioner that it would be "several months before the court decides whether to review [his] case." [8, at 30, 33.] But it was not until July 29, 2009—two years later—that Petitioner took action by filing a complaint with the ARDC regarding his appellate counsel. There is no evidence that Petitioner made any attempts to determine the outcome of his petition for leave to appeal during this two-year period (*e.g.*, writing/calling the state appellate defender, contacting the court, etc.), rendering unavailing his argument that he exercised the level of diligence required for equitable tolling. See *Holland v. Florida*, 560 U.S. 631, 653 (2010) (petitioner showed "reasonable diligence" because he "not only wrote his attorney numerous letters seeking crucial information and providing direction; he

also repeatedly contacted the state courts, their clerks, and the [local] State Bar Association" about his concerns regarding the timely filing of his federal habeas petition).

In his defense, Petitioner notes that it took a long time for the Illinois Appellate Court to rule on his direct appeal, and he used that as a gauge for how long it would take to hear back from the Illinois Supreme Court. [8, at 25.] But sitting in silence for two years and then filing an ARDC complaint can hardly be described as reasonable diligence. The bedrock for reasonableness in this context is communication, and two years of silence is not sufficient evidence to warrant equitable tolling.

In addition, Petitioner's attorney's failure to communicate in one instance is not an "extraordinary circumstance" that would justify equitable tolling. The attorney's conduct here falls into the "garden variety" category of attorney-negligence cases where equitable tolling is not warranted. *Holland*, 560 U.S. at 652 (attorney failed to file a federal habeas petition on time and was unaware of the date on which the limitations period expired—"two facts that, alone, might suggest simple negligence"). To trigger equitable tolling, the attorney's wrongdoing must "amount[] to more." *Id.* For example, in *Holland*, not only did the attorney fail to file petitioner's federal habeas petition in a timely fashion, he did so "despite [petitioner's] many letters that repeatedly emphasized the importance of his doing so," and his failure to respond to his client over a period of years amounted to client abandonment. *Id.* at 652–53; *Estremera v. United States*, 724 F.3d 773, 777 (7th Cir. 2013) ("Abandonment by counsel can toll the limitations period.");[6] see also *Modrowski v. Mote*, 322 F.3d 965, 968–69 (7th Cir. 2003) (attorney negligence is not a ground for equitable tolling); *Strong*, 530 F. Supp. 2d at 1038; see also

---

[6] *Estremera* was a statutory-tolling case involving a potential State-created impediment to the filing of a § 2255 petition, but the court nonetheless discussed the related concept of equitable tolling. See *Estremera*, 724 F.3d at 777 ("[B]ut Estremera doesn't propose common-law tolling; he invokes § 2255(f)(2).").

*Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (finding that there was "no inequity in requiring [the petitioner] to bear the risk of attorney error that results in a procedural default").

Here, the attorney's failure to inform Petitioner of the outcome of his petition for leave to appeal is the only alleged wrongdoing by that attorney, and there are no other facts (in the seven-page argument in Petitioner's "equitable tolling memorandum of law" [8, at 14–20] or anywhere else in the record) that would distinguish this case from the "garden variety" attorney-negligence cases that do not give rise to equitable tolling. Any rule to the contrary "would essentially equitably toll limitations periods for every person whose attorney missed a deadline." *Lawrence*, 549 U.S. at 336. Petitioner is not entitled to equitable tolling based on the failure of the state appellate defender to inform him of the Illinois Supreme Court's denial of his petition for leave to appeal.

### b. *Equitable Tolling Based on Lockdowns at Menard*

Petitioner also argues that he is entitled to equitable tolling because he "has been subjected to oppressive and excessive lockdowns at the Menard Correctional Center that ultimately denied him access to the prison law library materials and services." [8, at 17.] Denial of access to a prison law library can form a basis for equitable tolling where the inmate is denied access to the rules governing the habeas proceeding (including the applicable statute of limitations), and where the inmate demonstrates that he exercised reasonable diligence in attempting to file his petition. *Estremera v. United States*, 724 F.3d 773, 777 (7th Cir. 2013) (holding, in the related statutory-tolling context, that "the absence of library access may be an 'impediment' in principle");[7] *Strong*, 530 F. Supp. 2d at 1038–42 (citing *Pace v. DiGuglielmo*,

---

[7] Petitioner did not argue for statutory tolling under § 2244(d)(1)(B) based on his purported lack of access to the law library, despite *Estremera*'s recognition that such arguments are plausible. But this would be a difficult argument to make considering the facts of this case. That is, Petitioner already requested a delayed start date for his statute of limitations based on the "impediment" created by his counsel's failure

10

544 U.S. 408, 418 (2005)). Petitioner claims that he learned of the Illinois Supreme Court's denial of his petition for leave to appeal on August 5, 2009, and that over the next 25 months he "persever[ed] through the oppressive and excessive lockdowns at Menard" until he completed filed his state post-conviction petition on September 13, 2011.[8] [8, at 18; see also 8, at 23.]

As a point of perspective, because Petitioner offers no excuse for the five-month delay between the end of his state post-conviction proceedings (January 29, 2014) and the date listed on his § 2254 petition (July 7, 2014), those five-plus months count towards the one-year statute of limitations. And so even if the Court were to excuse the 17-month delay between February 27, 2008 and August 5, 2009 (while Petitioner was waiting to hear from his attorney), the Court would still need to excuse at least 18 of the 25 months during which Petitioner was allegedly denied access to the Menard law library. However, Petitioner is not entitled to *any* tolling under this theory.

Petitioner has made only conclusory allegations regarding the extent of the lockdowns during the time period in question, and has not provided any specifics as to the number of days that he was denied (or granted) access to the library during this time, why he needed access to the law library, or how his inability to access the law library impacted his ability to timely file his state post-conviction proceeding (or a placeholder § 2254 action). See *Taylor v. Michael*, 724 F.3d 806, 812 (7th Cir. 2013) (holding that a petitioner must explain how impaired access to a

---

to notify him of the denial of his petition for leave to appeal. As such, in order to benefit from § 2244(d)(1)(B) tolling for his law-library argument, Petitioner would need to piggyback one impediment argument on top of the other: *i.e.*, his appellate attorney created one impediment that lasted 17 months, and as soon as that impediment was lifted, the Menard law library created a second impediment that lasted another 25 months. Regardless, the Court pulled the rug out from under this argument by rejecting Petitioner's first basis for statutory tolling, making this continuation argument impossible.

[8] Even if Petitioner were eligible for equitable tolling based on the lockdowns at Menard, this would only stop the clock (at the earliest) on August 5, 2009. Because the Court already concluded that Petitioner is not eligible for equitable tolling for the 17 months between February 27, 2008 and August 5, 2009, any post-August 5, 2009 tolling would not impact the untimeliness of the petition.

law library impeded a timely filing); *Arroyo v. Brannon*, 2015 WL 4554758, at *3 (N.D. Ill. July 28, 2015) ("[Petitioner] does not attempt to explain how his being allowed only intermittent access to the law library, and how the lockdowns of unspecified length and frequency, prevented him from completing his petition in the nearly four months that elapsed between the denial of his post-conviction PLA and the expiration of the § 2244(d)(1) limitations period."); *Stamps v. Duncan*, 2014 WL 3748638, at *4 (N.D. Ill. July 30, 2014) (concluding that unspecified lockdowns coupled with rules limiting library access did not establish extraordinary circumstances to justify equitable tolling); *Strong*, 530 F. Supp. 2d at 1039, 1041 (equitable tolling was potentially warranted where the petitioner provided an affidavit from the litigation coordinator at Menard listing the prison's lockdown days in 2006 and claiming that he "didn't have access to the rules" governing his proceeding); *United States ex rel. Green v. Rednour*, 2011 WL 4435641, at *4 (N.D. Ill. Sept. 22, 2011) (refusing to apply equitable tolling based on a similar argument where petitioner did "not identif[y] the days or time periods of the lockdown"); *Jackson v. Evans*, 286 F. App'x 516, 516 (9th Cir. 2008) (same); *Parker v. Jones*, 260 F. App'x 81, 85 (10th Cir. 2008) (same); *Paulcin v. McDonough*, 259 F. App'x 211, 213 (11th Cir. 2007) (same). This total lack of evidence regarding Petitioner's attempts to access the law library and the impact of lockdown on Petitioner's ability to prepare his petition foreclose Petitioner's arguments on both the "diligence" and the "extraordinary circumstance" prongs of the equitable tolling analysis.

Petitioner did not file his § 2254 petition within the one-year statute of limitations, and Petitioner is not eligible for statutory or equitable tolling. The petition must be dismissed.

### B. Substantive Arguments

Respondent argues that in addition to being untimely, Petitioner's claims are non-cognizable, procedurally defaulted, and/or meritless. Because Petitioner's § 2254 petition is untimely, the Court need not address Respondent's alternative arguments for dismissal. *See Estremera*, 724 F.3d at 775 (federal statutes of limitations do not affect the court's subject matter jurisdiction, and district courts are free to address non-jurisdictional reasons for rejecting a suit or claim as they see fit). However, for the sake of completeness, the Court addresses the merits of Petitioner's claims as well.

#### 1. Illegal Sentences in Violation of 730 ILCS 5/5-8-1(c)

Petitioner argues that the trial court illegally imposed Petitioner's sentences in violation of 730 ILCS 5/5-8-1(c) when it pronounced sentences of 10 years for armed robbery and 8-year terms for the aggravated criminal sexual assault convictions, and then subsequently increased the sentences to 18 years and 16 years, respectively. [See 8, at 5–6.]

Petitioner's claim is not cognizable because "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Instead, federal habeas courts are "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* In addition, Petitioner procedurally defaulted on this claim because the state appellate court held that Petitioner forfeited it by not raising it in the trial court. *People v. Magee*, 872 N.E.2d 63, 70–72 (Ill. App. Ct. 2007) (concluding that Petitioner failed to preserve the issue and, alternatively, that the trial court properly applied state law in increasing Petitioner's sentence after its imposition); *Coleman v. Thompson*, 501 U.S. 722, 729–31 (1991) ("[A] state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims.").

### 2. Due Process Violation Based on Trial Court's Erroneous Denial of Pre-Trial Motion to Dismiss Indictment

Petitioner also argues that he was denied his right to due process of law when the trial court erroneously denied his pre-trial motion to dismiss the indictment. In that pre-trial motion, Petitioner argued that his indictment was based on deceptive and inaccurate testimony offered by two Chicago Police Officers. [See 8, at 7–9.] This claim is unavailing for several reasons.

First, Petitioner invokes only Illinois law and does not allege any constitutional violations, making his claims non-cognizable under federal habeas law. *Estelle*, 502 U.S. at 67.

Second, Petitioner procedurally defaulted on this claim because the state appellate court affirmed the trial court's judgment holding that petitioner's post-conviction allegations were without merit [11-1, at 153–54], and that Petitioner waived the claim by not raising it on direct review. *People v. Magee*, 872 N.E.2d 63, 70–72 (Ill. App. Ct. 2007) (no mention of claim on direct appeal); *People v. Magee*, 2013 IL App (1st) 120799 (Ill. App. Ct. Aug. 20, 2013) (affirming trial court's denial of Petitioner's post-conviction petition as meritless under Illinois law and granting Petitioner's attorney's *Finley* motion holding that Petitioner's post-conviction arguments were without merit) [see 11-1, at 141–42]; *Coleman*, 501 U.S. at 729–31; *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009) (finding of waiver by a state post-conviction court is an independent and adequate state law ground of decision barring federal habeas review).

Third, there is no clearly established Supreme Court law saying that a prosecutor's knowing presentation of perjured testimony before a grand jury violates a criminal defendant's constitutional rights, and thus the prosecutor's conduct did not "result[] in a decision that was contrary to, or involved an unreasonable application of, clearly established [Supreme Court] law" so as to warrant habeas relief under 28 U.S.C. § 2254(d)(1). See *United States ex rel. Brown v. Pierce*, 2012 WL 851519, at *4 (N.D. Ill. Mar. 13, 2012) ("There is no clearly established

Supreme Court precedent providing state prisoners a due process right to be indicted by a grand jury solely on truthful testimony."); *United States ex rel. Kendrick v. McCann*, 2010 WL 3700233, at *16 (N.D. Ill. Sept. 8, 2010) (same); *United States ex rel. Changyaleket*, 2008 WL 5157976, at *5 (N.D. Ill. Dec. 8, 2008) (same). Regardless, any prejudice stemming from the alleged false testimony before the grand jury was rendered harmless by trial jury's guilty verdict. See *United States ex rel. Quesada v. Atchison*, 2014 WL 4668644, at *5 (N.D. Ill. Sept. 18, 2014) ("A petit jury's guilty verdict renders the alleged prejudice of the grand jury harmless because it demonstrates 'that there was probable cause to believe that the defendant[] w[as] guilty as charged.'" (quoting *United States v. Mechanik*, 475 U.S. 66, 70 (1986))).

### 3. Eyewitness Identification Not Supported by Empirical Research

Petitioner's third and final argument is that he was denied a fair trial because the jury was misinformed regarding the weight they should give to the eyewitness testimony identifying Petitioner as the offender. Petitioner alleges that there was no physical evidence tying him to the scene of the crime, and that his conviction was based on descriptions of the suspect offered by two witnesses (the victims), as well as positive identifications made by those witnesses in a photo array, a line-up, and at trial. The judge provided the jury with Illinois Pattern Jury Instruction 3.15, instructing them to consider the witness's prior descriptions and their level of certainty in assessing the weight to give their identifications. Petitioner now argues that this instruction was erroneous because "recent empirical research" has established that these factors do not bear a meaningful correlation with the reliability of eyewitness identification. [8, at 10.]

First, Petitioner's claim does not allege a constitutional violation, and is therefore non-cognizable in a habeas petition. *Estelle*, 502 U.S. at 67.

Second, the trial court's instruction regarding the reliability of eyewitness testimony is consistent with clearly established federal law, and thus is not a viable grounds for habeas relief under 28 U.S.C. § 2254(d)(1). See *Neil v. Biggers*, 409 U.S. 188, 197–99 (1972) (explaining the reliability of eyewitness identifications); *United States v. Jones*, 454 F.3d 642, 648–49 (7th Cir. 2006) ("Eyewitness identification testimony violates a defendant's right to due process of law when it creates a 'very substantial likelihood of irreparable misidentification.'" (quoting *Neil v. Biggers*, 409 U.S. at 198)). Even if Petitioner had alleged a due process violation, his generalized reference to "recent empirical research" regarding eyewitness identification does not demonstrate that the trial court disregarded a "very substantial likelihood of irreparable misidentification."

Third, the claim is procedurally defaulted because the state appellate court held that Petitioner failed to properly preserve the issue for appeal. *People v. Magee*, 872 N.E.2d 63, 68–69 (Ill. App. Ct. 2007) (concluding that Petitioner failed to preserve the issue and that it was not otherwise reviewable under the "plain error rule," and, alternatively, that Petitioner's conviction was sufficiently supported by the victims' positive identification); *Coleman*, 501 U.S. at 729–31 (1991). Petitioner also defaulted on this claim by failing to raise it in his petition for leave to appeal to the Illinois Supreme Court on direct appeal. See *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

### 4. Excusing Procedural Default

Procedural default can be excused where the petitioner demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law or that the failure to review the claim will result in a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). Petitioner has not offered any arguments to excuse his defaults, and thus Petitioner's defaults are not excused. *Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008)

("When a petitioner presents a defaulted claim for federal habeas review, we may consider it only if he can establish cause and prejudice for the default or that the failure to consider the claim would result in a fundamental miscarriage of justice. [Petitioner] fails to argue either point, and so we cannot consider his claim." (internal citation omitted)).

## III. Motion for Discovery

In lieu of filing a response brief in support of his habeas petition, Petitioner requested that the Court grant him leave to serve document requests on Respondent. [See 19.] Specifically, one of Petitioner's claims in his habeas petition is that two Chicago Police Officers provided false testimony to the grand jury, and Petitioner argues that the requested documents—various police records and reports regarding these particular officers—are necessary to show that the officers "perjured themselves, obstructed justice, and violated the rights of Petitioner throughout his detainment, arrest and consequent conviction." [19, at 2.]

Because Petitioner's § 2254 petition is untimely, any discovery related to that petition would be futile in advancing his arguments. In addition, Petitioner's perjury claim (*i.e.*, the grand-jury claim) is non-cognizable and procedurally defaulted, making any further discovery on that issue unnecessary. Petitioner's motion [19] is denied.

## IV. Certificate of Appealability

Per Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller-El v.*

*Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his § 2255 claims debatable or wrong. *Miller-El*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And in cases where a district court denies a habeas claim on procedural grounds, the court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. See *Slack*, 529 U.S. at 485.

Similarly, when a habeas petition is dismissed as untimely, a certificate of appealability should issue only if reasonable jurists would find the petition's timeliness "debatable." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted."); *Stamps v. Duncan*, 2014 WL 3748638, at *4 (N.D. Ill. July 30, 2014).

In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ regarding the merits of his claims. Petitioner's claims are non-cognizable, without merit, and procedurally defaulted, and thus further review is not warranted. In addition, due to the significant untimeliness of Petitioner's § 2254 petition and the untenable grounds for tolling, no reasonable jurists would find the

petition's timeliness "debatable." Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**V.      Conclusion**

For these reasons, the Court denies Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 [8] and his motion for discovery [19]. The Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

Dated: October 13, 2015

_____
Robert M. Dow, Jr.
United States District Judge